IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

CASSANDRA WITHERSPOON and
CLARISSA DERRICK,

      Plaintiffs,

v.                                                       No. CIV 03–1160 BB/LAM

NAVAJO REFINING COMPANY, L.P.,
NAVAJO REFINING COMPANY,
HOLLY CORPORATION, and
TESSENDERLO KERLY, INC.,

      Defendants.

MEMORANDUM OPINION
AND
ORDER OF EXCLUSION

THIS MATTER is before the Court on Defendants' Motion in Limine to Exclude the Expert Testimony of James Dahlgren, M.D., and Erica Elliott, M.D., pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals. (Mot., Doc. 78; Mem., Doc. 79.)  The Court has previously excluded expert testimony from Dr. Elliott because Plaintiffs did not comply with the disclosure requirements of Rule 26.  (Mem. Op. & Order, Doc. 121.) In the alternative, this Memorandum Opinion also excludes Dr. Elliott from testifying as an expert witness because she has failed to establish she is qualified on the relevant issues and therefore her testimony would not be helpful to a trier of fact. For the reasons set forth below, the Court finds Defendants' Motion should be

**GRANTED IN PART, as to Dr. Elliott.  The Court will hold a <u>Daubert</u> hearing to consider the motion with respect to Dr. Dahlgren.**

## BACKGROUND

Plaintiffs complain that Defendants' Artesia, New Mexico, refinery exposed them to toxic substances which have caused numerous and various injuries. In support of that claim, Plaintiffs have offered evidence showing that (1) the refinery has paid hundreds of thousands of dollars of fines for violating air quality standards, (Pls. Resp. Ex. 9 at 1, 1998 Settlement Agreement), (2) the refinery exceeded federal air quality standards for <u>inter alia</u>, benzene, toluene, xylene, and sulfur dioxide, (Pls. Resp. Ex. 10 at 15, 1995 EPA Air Sampling Report; <u>Id.</u> Ex. 3 at 2, 1996 NMED Mem.), and (3) the refinery "has been a consistent violator of air quality regulations" (Pls. Resp. Ex. 3 at 3).  Plaintiffs' evidence suggests that the refinery on several occasions released toxins at levels that could effect the health of local citizens.

Plaintiffs owned and operated a business three blocks from the refinery from 1994 to 1999; Plaintiff Cassandra Witherspoon's residence of sixteen years was seven blocks from the refinery; both Plaintiffs grew up in Artesia.  (Doc. 88 at 4.) In August 2000, Plaintiff Witherspoon experienced <u>inter alia</u> slurred speech, loss of coordination, shortness of breath and overall weakness.  (Defs. Mem. Exclude Dr. Elliott, Doc. 77, Ex. 4.) Plaintiff and her husband, a chiropractor, concluded she had had a stroke.  (<u>Id.</u>)  She continued to experience symptoms and in July 2001, she

consulted Dr. Elliott, who diagnosed her with nine different conditions, eight of which are allegedly caused by the emissions from Defendants' refinery. (Doc. 77, Ex. C, Elliott Rep. at 2.) Dr. Elliott recommended that Plaintiff move from Artesia, and Plaintiff has noticed that her symptoms improve when she leaves Artesia. (Id. at 1.) Plaintiff Clarissa Derrick first saw Dr. Elliott in May 2003, complaining of inter alia, weakness, headache and diminished cognitive abilities. (Id. at 2.) She was also diagnosed as suffering from five different conditions, four of which were allegedly caused by Defendants' refinery.

Plaintiffs have provided federal agency reports showing that the substances the refinery has released in excessive amounts can cause the symptoms which they have experienced. (See, e.g., id. at Ex. 5 at 2, benzene can cause headaches, drowsiness and confusion; id. at Ex. 6, xylene can cause headaches, loss of muscle coordination, memory difficulties and skin irritation; id. at 8, toluene can cause tiredness, confusion, weakness and memory loss.)

To establish a causal link between the refinery's emissions and Plaintiffs' symptoms, Plaintiffs have offered the testimony of two expert witnesses, Dr. Erica Elliott, M.D.[1] and Dr. James Dahlgren, M.D., who both opine that Plaintiffs' symptoms are caused by the refinery's emissions. (Defs. Mem. Exclude Dr. Elliott,

---

[1]The Court has previously excluded any expert testimony from Dr. Elliott because she was not timely disclosed as an expert witness pursuant to the Court's scheduling order. (See, Doc. 121.) As will become apparent below, Dr. Elliott's testimony also cannot survive Daubert analysis.

3

Doc. 77, Ex. 4.; Pls. Resp. Defs. Mot. Exclude Dr. Elliott and Dr. Dahlgren, Ex. 15). Defendants have moved to exclude the testimony of both physicians on three grounds: (1) neither Dr. Elliott nor Dr. Dahlgren is qualified to offer expert testimony in this case, (2) their expert opinions lack foundation, and (3) the methodologies used by both experts do not meet the standards of admissibility in Daubert.

## DISCUSSION

### Daubert Hearing

Expert witnesses may testify in the form of an opinion if: (1) their testimony is based on sufficient facts or data, (2) the testimony is a product of reliable principles and/or methods, and (3) the witness has applied the principles and methods reliably to the case. Fed. R. Evid. 702. However, the district court must act as a gatekeeper in deciding whether to admit or exclude such evidence. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). In that role, a court must assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts. Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003).

The most common way of fulfilling this gatekeeper role is for a court to hold a Daubert hearing. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[6][b] (Joseph M. McLaughlin, ed., 2d ed. 2005). But a hearing is not universally required; a court has discretion to determine the optimal method of

assessing expert opinion admissibility.  <u>Goebel v. Denver & Rio Grande Western R.R. Co.</u>, 215 F.3d 1083, 1087 (10th Cir. 2000).  The primary consideration is whether a hearing is needed for the district court to obtain sufficient evidence.  <u>Id.</u>  The trial court must make detailed findings concerning the application of Rule 702 and <u>Daubert</u> in order to fulfill its gatekeeper role. <u>Dodge</u>, 203 F.3d 1200 n.12; <u>also see</u>, <u>Tuato v. Brown</u>, 85 Fed. Appx., 674, 678 (10th Cir. 2003) (unpublished opinion) (remanding to district court for specific findings and discussion).

In this case, the Defendant has filed Dr. Elliott's "expert" report with the Court as well as her depositions.   Based on those documents, the Court finds that this is sufficient evidence to determine admissibility of Dr. Elliott's testimony and no hearing is required. <u>Goebel</u>, 215 F.3d at 1087. With regard to Dr. Dahlgren, the Court will hold a <u>Daubert</u> hearing before ruling on the admissibility of his testimony. <u>Dodge</u>, 328 F.3d at 1229.

### Dr. Elliott's Qualifications

Defendants argue that although Plaintiffs suffer from alleged neurological injuries, Dr. Elliott is not qualified to testify in this case because she has no training or expertise in neurology or neuropsychology. The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question. 4 Jack B. Weinstein &

Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 702.04[1][a] (Joseph M. McLaughlin, ed., 2d ed. 2005). A doctor's expertise need not be acquired by formal education in the precise area in issue; practical experience can also support expertise. <u>United States v. Charley</u>, 189 F.3d 1251, 1263 (10th Cir. 1999). However, merely being a physician is not sufficient to qualify an expert to testify; the witness must have expertise reasonably related to the issue. <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 970 (10th Cir. 2001) (upholding exclusion of orthopedic surgeon's testimony where issue was adequacy of warning on device with which surgeon had no familiarity).

<u>Daubert</u> suggests several factors that courts may consider in evaluating proposed expert testimony: (1) whether the theory has been tested, (2) whether the theory has been published and subject to peer review, (3) the error rate, (4) the existence of standards and whether the witness applied them in the present case, and (5) whether experts generally accept the theory. 509 U.S. 579, 593-594 (1993). This list is not all-inclusive, <u>Daubert</u>, 509 U.S. 594-95, and district courts should be flexible with the ultimate goal of assuring that the testimony will be scientifically valid. 4 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 702.05[2][a] (Joseph M. McLaughlin, ed., 2d ed. 2005).

Of particular relevance here, a court should determine whether the witness's conclusion represents an unfounded extrapolation from the data, <u>General Electric</u>

**Co. v. Joiner, 522 U.S. 136, 146 (1997); whether the witness has adequately accounted for alternative explanations for the effect whose cause is at issue,[2] whether the opinion was reached for the purposes of litigation or as the result of independent studies,[3] or whether it unduly relies on anecdotal evidence, Norris v. Baxter Healthcare Corp., 397 F.3d 878, 885, (10th Cir. 2005).**

**Dr. Elliott did not consider any scientific data regarding emissions from the refinery. (Elliott Dep. 87:7-88:18; 161:8-13; 185:6-18.) Her initial conclusion that Defendants' refinery had caused Plaintiffs' symptoms was based on nothing more than Plaintiffs' anecdotal evidence that she felt worse in Artesia and that her symptoms coincided with smells from the refinery. Norris, 397 F.3d at 885; Elliott Dep. 151:7-15.**

**Dr. Elliott has not adequately accounted for alternative explanations. She concedes that there are other potential causes of or contributors to Plaintiffs' symptoms, such as the fabric store in which they work, (Elliott Dep. 101:6-10), or multiple sclerosis (Doc. 77, Ex. C, Elliott Rep. at 2, 3); yet Dr. Elliott simply "presumed" that Plaintiffs' injuries were caused by the refinery, not the fabric store and not multiple sclerosis. McCorvey, 298 F.3d 1256-57; Miller, 356 F.3d at 1333 .**

---

[2]McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256-57 (11th Cir. 2002); also see, Miller v. Pfizer, 356 F.3d 1326, 1333 (10th Cir. 2004).

[3]Daubert v. Merrell Dow, 43 F.3d 1311, 1317 (9th Cir. 1995) (excluding testimony on remand); United Phosphorus, Ltd. v. Midland Fumigant, Inc., 173 F.R.D. 675, 682 (D. Kan. 1997).

The record reveals that Dr. Elliott is a physician trained in family practice and environmental medicine and she has treated patients with chemical injuries since 1993. (Defs. Mot. Exclude Dr. Elliott, Doc. 77 Ex. C.) She is certified in environmental medicine. (Pls. Resp. Ex. 12 at 33.) She has published a book on the health effects of chemicals found in indoor air, however, this book appears to be about construction techniques and materials for homes rather the discharge that would be produced by a refinery. Thus, that publication does not buttress her qualifications for this case. Ralston. There is no evidence that she has any expertise related to refineries, petrochemicals, or illnesses arising from exposure to diffuse substances in the outdoor environment. Similar to the surgeon in Ralston, Dr. Elliott may have expertise that is generally relevant to Plaintiffs' injuries, but she has no expertise delineating the complex causation issues associated with outdoor air pollution. Unlike Charley, where the physician had extensive experience diagnosing causation of the plaintiff's injuries, here, Dr. Elliott's résumé provides no foundation for expertise in distinguishing whether Plaintiffs' injuries are caused by Defendants' refinery, some other source of outdoor pollution, or something else altogether.

Finally, Dr. Elliott's report was prepared expressly at the request of Plaintiffs' attorney and for purposes of litigation. Daubert, 43 F.3d at 1317; Elliott Dep. 89:7-20. That report is not based on independent research that she has done; instead, it was prepared after this litigation had commenced and only two days after first seeing

any data about the refinery's emissions, minimizing any persuasive value it may have.  Elliott Dep. 87:7-88:18; <u>Daubert</u>, 43 F.3d 1317; *cf.* Bruce D. Black, <u>The Use (or Abuse) of Expert Witnesses in Post-Daubert Employment Litigation</u>, 17 Hofstra Lab. & Emp. L.J. 269, 274 (2000) (discussing cases limiting "forensic" experts).

The accumulation of unwarranted extrapolations, presumptions, failure to account for alternative explanations, and a report prepared solely for litigation leads this Court to conclude that Dr. Elliott's expert testimony would not be helpful to a trier of fact and it should be excluded. <u>Daubert</u>, 509 U.S. 594-95; <u>Joiner</u>, 522 U.S. 136, 146.

### ORDER

For the above stated reasons, the Court finds that Dr. Elliott is not qualified to testify as to the causation of Plaintiffs' injuries, her testimony would not be helpful to a trier of fact and she will be excluded from offering expert testimony. Defendants' Motion is GRANTED IN PART with respect to Dr. Elliott.

SO ORDERED this 18th day of July, 2005.

_____
**BRUCE D. BLACK**
**United States District Judge**

**For Plaintiff:**
    David R. Lira, Los Angeles, CA

    Michael Newell, HEIDEL SAMBERSON NEWELL COX & MCMAHAN, Lovington, NM

**For Defendants:**
    Thomas M. Hnasko, Gary W. Larson, Santa Fe, NM

    Richard E. Olson, Roswell, NM

    Joel M. Carson, II, Artesia, NM

    Richard P. Levy, Jeffrey D. Dintzer, Los Angeles, CA